# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STAR INSURANCE COMPANY,<br>  Plaintiff and<br>  Counter Defendant,<br><br>v.<br><br>(1) BEAR PRODUCTIONS, INC.<br>  Defendant and<br>  Counter Plaintiff,<br><br>and<br><br>(2) WILLIAM REESE,<br>(3) DIANE REESE,<br>(4) HERMAN TOLBERT,<br>(5) TIM TANKSLEY,<br>(6) SUSAN HOLMES, and<br>(7) CHARLES TACKETT,<br>  Defendants. | Case No. CIV-12-149-RAW |

## ORDER & OPINION[1]

  Star filed this action on April 4, 2012, seeking a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.[2] Star seeks a declaration that

---

  [1]For clarity and consistency herein, when the court cites to the record, it uses the page numbers assigned by CM/ECF.

  [2]Section 2201 provides in pertinent part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.
  As the court mentioned in the order denying the motion to stay, in deciding whether to hear this action, the court considered: "(1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race to *res judicata*'; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encrouch upon state

Bear Productions, Inc. (hereinafter "Bear") is not entitled to defense or indemnity coverage under a commercial general liability policy in connection with an underlying environmental damage lawsuit filed in the District Court in and for LeFlore County, Oklahoma (hereinafter "Underlying Action").

Bear has filed a counterclaim seeking a judgment declaring that Star has a duty to defend Bear in the Underlying Action under both the commercial general liability policy and an umbrella policy. Bear argues that the issue of whether Star has a duty to indemnify Bear will not be ripe until the conclusion of the Underlying Action.

Now before the court are Bear's motion for relief from order denying motion to stay [Docket No. 46] and motion for additional time to complete discovery prior to responding to Star's motion for summary judgment [Docket No. 55]. Both motions are denied.

**UNDERLYING ACTION**

The Underlying Action, filed on October 6, 2011, is a class action lawsuit against Bear and several other defendants[3] based on, *inter alia*, the defendants' alleged disposal of waste materials that resulted in a noxious and harmful nuisance, pollution and contamination.

The Amended Petition[4] states that Bear's "business includes the transport and disposal of

---

jurisdiction; and (5) whether there is an alternate remedy which is better or more effective." State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994) (citing factors to consider when deciding whether to hear a declaratory action).

[3]The original Petition names 24 defendants. An Amended Petition was filed on October 4, 2012, naming 73 defendants.

[4]The Amended Petition was filed in the Underlying Action on October 4, 2012, but was not filed in this action until it was attached to Star's summary judgment motion on May 9, 2013, after this court entered the Order denying Bear's motion to stay all issues except the duty to

Produced Fluids, saltwater, and other waste materials from oil and gas well drilling, completion and production operations to the MMHF[5] Disposal Pit." Docket No. 50, Exh. 4, LeFlore County Amended Petition, at 21.

The Amended Complaint lumps Bear in with other defendants under the title "Produced Fluid Defendants" and states that the action is brought against them to "recover for injuries . . . as a direct result of the negligence, gross negligence, negligence *per se*, noxious and harmful nuisance, pollution and contamination, trespass, diminution of property values and business interest, personal injury, unjust enrichment, and violation of public trust . . . ." Id. at 9. The plaintiffs allege that "[b]eginning in 2003 or before," and continuing "[o]ver the course of 7 years it is believed" that Bear and other defendants "transported and disposed of the Produced Fluids at the MMHF Disposal Pit." Id. at 28-29. The plaintiffs allege that exposure to the Produced Fluids caused them "injuries to their person, real property and personal property." Id. at 6.

The term "Produced Fluid" in the Amended Petition is defined: "Produced Fluid is generated during the drilling, completion, and production phases of oil and gas operations. Subsurface formations are typically permeated with fluids such as saltwater and hydrocarbons. 'Produced fluid' is defined under Oklahoma law as a deleterious substance." Id. at 29. The Amended Petition states the following five causes of action against Bear: (1) public and private

---

defend. As the court cited the original Petition in that Order, Bear argues that the court's Order was based on facts no longer in existence. The changes to the Underlying Action do not alter the outcome of the motion to stay. Nevertheless, for clarity, the court includes the allegations of the Amended Petition here.

[5]MMHF is "Making Money Having Fun, LLC," another defendant in the Underlying Action. It is allegedly the owner and/or operator of the disposal pit at issue in the Underlying Action. Docket No. 50, Exh. 4, LeFlore County Amended Petition, at 7.

nuisance; (2) trespass; (3) negligence; (4) negligence *per se*; (5) unjust enrichment.[6] All are based on Bear's alleged transport and disposal of Produced Fluids, saltwater, and other waste materials from oil and gas well drilling to the MMHF disposal pit.

**THE POLICIES**

Bear has two policies with Star, a Commercial General Liability Policy, the "Primary Policy," and an Umbrella Policy. Both policies were in effect from March 16, 2006 until March 16, 2007.

### **Primary Policy**

The Primary Policy restricts Star's duty to defend.

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. <u>However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.</u>

Docket No. 2, Exh. 1, Primary Policy, at 78. (emphasis added).

The Primary Policy also includes a pollution exclusion. See Id. at 79-80 and 91. The section states in pertinent part: "This insurance does not apply to . . . 'Bodily injury' or 'property damage' arising out of the actual, <u>alleged</u> or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' . . . ." Id. at 79-80 (emphasis added). "'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or

---

[6]The Amended Complaint includes two other causes of action that are not against Bear.

4

reclaimed." Id. at 91.

Attached to the Primary Policy is a rider that provides limited pollution coverage at designated well sites for bodily injury, property damage or environmental damage caused by a "pollution incident." Id. at 93-97. The rider states that "[d]esignate[d] well site" refers to the "specific location(s) specified in the Declarations of this policy upon which you own, lease or rent an oil, gas or geothermal well(s)." Id. at 97. Then in another rider titled "Designated Well Sites – Location Schedule," is the statement: "schedule on file with company." Id. at 99. The parties have not provided the court with a copy of that schedule. Also attached to the policy are riders titled, "Exclusion – Saline Substances Contamination," and "Exclusion – Oil or Gas Producing Operations." Id. at 113 and 116.

### **Umbrella Policy**

The Umbrella Policy provides insurance in excess of that provided by the underlying insurance. The Umbrella Policy states that Star has "the duty to defend any claim or Suit seeking damages covered by this policy . . . ." See Docket No. 38, Exh. 1, Umbrella Policy, at 4 (emphasis added). "Suit means a civil proceeding in which Bodily Injury, Property Damage, Personal Injury, or Advertising Injury to which this insurance applies is alleged." Id. at 9.

The Umbrella Policy also includes a pollution exclusion. See Id. at 9-11 and 19. The policy states in pertinent part: "This insurance does not apply to . . . Bodily Injury, Property Damage, or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants from any source anywhere in the world." Id. at 9 and 19.

**MOTION FOR RELIEF FROM ORDER DENYING MOTION TO STAY**

This court previously denied Bear's motion to stay all proceedings except whether Star has a duty to defend Bear in the Underlying Action. The court ruled that the issue in this case is coverage, not whether Bear actually polluted. The court rejected Bear's argument that a determination of the indemnity issue in this case and Bear's alleged liability in the Underlying Action turn on the same key factual issues, *i.e.*, whether the water Bear transported and disposed was a pollutant.

The court's task in this action is to examine the contractual language and decide whether Bear is entitled to coverage. The court emphasized the word "alleged" in the pollution exclusion clauses in its order denying the motion to stay and in its order granting summary judgment in a related case against Bear. Bear argues that the omission of the word "alleged" from the pollution exclusion clause in the Umbrella Policy results in coverage in the Underlying Action if Bear did not actually pollute. The court will not decide this issue here.[7]

Now before the court is only whether to stay the indemnification coverage issue and move forward only with the defense coverage issue. As the court pointed out previously, the duty to defend is directly tied to the duty to indemnify. The Primary Policy specifically states: "<u>we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply</u>." Docket No. 2, Exh. 1, Primary Policy, at 78 (emphasis added). The Umbrella Policy states that Star will have the duty

---

[7]The court will consider arguments on this issue at the summary judgment stage. The court further notes that it need not and has no intention of deciding the issue in the Underlying Action of whether Bear polluted. This court will only examine whether Bear is covered under the policies in any event.

to defend claims or Suits "seeking damages <u>covered by</u> this policy." Docket No. 38, Exh. 1, Umbrella Policy, at 4 (emphasis added). These duties are contractually tied to one another. The court does not believe that it is necessary or efficient to stay any part of this action at this time. Moreover, to accept Bear's argument would be to effectively rule that Bear's interpretation of the contractual language is correct. Such a ruling would be premature. The motion for relief from the order denying the motion to stay is denied.

**MOTION FOR EXTENSION OF TIME**

Bear requests additional time to complete discovery prior to responding to Star's motion for summary judgment. Bear seeks this extension so that it may gather evidence to argue for "regulatory estoppel" or "quasi-estoppel." Bear argues that Star must be prevented from taking one position with the Oklahoma Department of Insurance and a different position in this court. It requests additional time to gather evidence about Star's policies, definitions, exclusions and endorsements beyond the policies between these parties. Of course, the court will consider such arguments at the summary judgment stage to the extent that any portions of the policies are ambiguous.

This case was filed over a year ago. Bear has not filed any motions to compel. Presumably then, Star has satisfactorily responded to discovery requests, and Bear should be in possession of everything it needs to respond to the summary judgment motion.

The motion for extension of time is denied. As Star points out, much of Bear's motion for extension of time is argument against the summary judgment motion. Nevertheless, the court

will afford Bear an opportunity to fully respond to the summary judgment motion. Bear shall respond no later than July 5, 2013.

**CONCLUSION**

The motion for relief from order denying motion to stay [Docket No. 46] is hereby DENIED. The motion for additional time to complete discovery prior to responding to Star's motion for summary judgment [Docket No. 55] is hereby DENIED. Bear shall respond to Star's summary judgment motion no later than July 5, 2013.

IT IS SO ORDERED this 13th day of June, 2013.

**Dated this 13th day of June, 2013.**

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma