# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STAR INSURANCE COMPANY,<br>        Plaintiff and<br>        Counter Defendant,<br><br>v.<br><br>(1) BEAR PRODUCTIONS, INC.<br>        Defendant and<br>        Counter Plaintiff,<br><br>and<br><br>(2) WILLIAM REESE,<br>(3) DIANE REESE,<br>(4) HERMAN TOLBERT,<br>(5) TIM TANKSLEY,<br>(6) SUSAN HOLMES, and<br>(7) CHARLES TACKETT,<br>        Defendants. | Case No. CIV-12-149-RAW |

## ORDER & OPINION[1]

Star Insurance Company (hereinafter "Star") filed this action on April 4, 2012, seeking a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Star seeks a declaration that Bear Productions, Inc. (hereinafter "Bear") is not entitled to defense or indemnity coverage under a commercial general liability policy in connection with an environmental damage lawsuit originally filed in the District Court in and for LeFlore County,

---

[1]For clarity and consistency herein, when the court cites to the record, it uses the page numbers assigned by CM/ECF.

Oklahoma (hereinafter "Underlying Action").[2]   Star is currently defending Bear in the Underlying

Action under a reservation of rights.

Bear has filed a counterclaim seeking a judgment declaring that Star has a duty to defend

Bear in the Underlying Action under both the commercial general liability policy and an umbrella

policy.   Bear argues that the issue of whether Star has a duty to indemnify Bear will not be ripe

until the conclusion of the Underlying Action.

Now before the court are Star's motion for summary judgment [Docket No. 50] and

Bear's motion to compel discovery [Docket No. 60].   In its summary judgment motion, Star

argues that there is no genuine issue as to any material fact and that it is entitled to summary

judgment as a matter of law.   Bear argues, *inter alia*, that the liability policies at issue provide

Bear with coverage, that the policies are ambiguous, and that read literally, the policies eliminate

virtually all coverage for risks inherent to Bear's business.   For the reasons delineated below, the

motion for summary judgment is hereby granted.   Bear's motion to compel discovery is hereby

denied.

**UNDERLYING ACTION**

The Underlying Action, originally filed on October 6, 2011 in the District Court of

---

[2]"Declaratory relief is available in either federal court or Oklahoma state court."
Automax Hyundai South v. Zurich Am. Ins. Co., 720 F.3d 798, 810 n. 3 (10th Cir. 2013).
Section 2201 of the Declaratory Judgment Act provides in pertinent part: "In a case of actual
controversy within its jurisdiction . . . any court of the United States, upon the filing of an
appropriate pleading, may declare the rights and other legal relations of any interested party
seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.
"Invoking this provision, insurers often seek declaratory judgment in federal court . . . on whether
they have a duty to defend [and indemnify] an insured under the terms of a liability policy."
Automax, 720 F.3d at 810 n. 3.  As the court has previously mentioned, in deciding whether to
hear this action, the court considered the five factors listed in State Farm Fire & Cas. Co. v.
Mhoon, 31 F.3d 979, 983 (10th Cir. 1994).

LeFlore County, Oklahoma, is a class action lawsuit against Bear and several other defendants based on, *inter alia*, the defendants' alleged disposal of waste materials that resulted in a noxious and harmful nuisance, pollution and contamination. On October 4, 2012, a First Amended Petition was filed in the Underlying Action in LeFlore County. On November 5, 2012, that case was removed to federal court.[3] On August 19, 2013, the plaintiffs in the Underlying Action filed a First Amended Complaint. CIV-12-457-JH, Docket No. 314. A Corrected First Amended Complaint was filed on August 20, 2013 to include the full caption. CIV-12-457-JH, Docket No. 315.

The Corrected First Amended Complaint (hereinafter "Underlying Complaint") begins by noting that the action is filed on behalf of the named plaintiffs and other similarly situated persons "who seek to recover for the pollution and contamination of the environment in which they live, work and recreate and for injuries and the real and immediate threat of injuries to their person and property, which have been, or are being, caused by the presence of, or the exposure to . . . produced fluid waste ("PFW," specifically defined below)." CIV-12-457-JH, Docket No. 315, Underlying Complaint, at 4.

The Underlying Complaint states that Bear is an Oklahoma corporation engaged in the transport of PFW to the MMHF[4] Dump Site. Id. at 37. The Underlying Complaint defines

---

[3]That case is now before the United States District Court for the Eastern District of Oklahoma. The case number is CIV-12-457-JH. The court herein takes judicial notice of the pleadings in that case. See Eden v. Voss, 105 Fed.Appx. 234, 240 n. 6 (10th Cir. 2004) (noting that "[i]n a summary judgment context, it is appropriate for the district court to take judicial notice of pleadings in another case." ).

[4]MMHF, LLC is another defendant in the Underlying Action. It is an Oklahoma company also known as "Making Money Having Fun, LLC," "Clean Hydro Reclamation, LLC," and "Clean Hydro Evacuation, LLC." MMHF is allegedly the owner and operator of the disposal pit at issue in the Underlying Action, the "MMHF Dump Site." CIV-12-457-JH, Docket No.

"Produced Fluid Waste ('PFW')" as:

> those waste fluids and solids which are generated by operators during the course
> of oil and gas drilling completion operations.  PFW includes saltwater, sand, acid,
> oil-based drilling fluids, water-based drilling fluids, completion flowback fluid,
> frack flowback fluid, workover flowback fluid, rainwater gathered on drilling and
> productions sites, drilling cuttings, pit water, including frack, mud, circulation and
> reserve pits, and numerous other fluids and solid wastes generated during the
> exploration and completion of oil and gas wells.

Id. at 81.

The Underlying Complaint includes Bear in a category it terms the "PFW Defendants."  It alleges that the "PFW Defendants have transported and caused to be transported, toxic, untreated PFW . . . into the State of Oklahoma for discharge into the open, unlined MMHF Dump Site pit and into the public and private waters, soils, and air of the Class Area."  Id. at 44.  The Underlying Complaint further alleges that "between 2003 and 2009, the PFW Defendants disposed of PFW from oil and gas drilling completion operations at the MMHF Dump Site in violation of [Oklahoma Corporation Commission] Orders and safe disposal practices."  Id. at 83.

The Underlying Complaint also alleges:

> the PFW Defendants acquired, created, generated, stored and disposed of
> significant volumes of toxic, nonhazardous, hazardous, and regulated chemicals,
> chemical compositions, silica quartz crystalline particulate matter ("proppant"),
> metals, solvents, acids, salts, corrosives, anti-corrosives, refined petroleum
> products, polymers, surfactants, and other regulated harmful constituents.  These
> toxic and potentially toxic pollutants, generated by the PFW Defendants and
> discharged into the MMHF Dump Site pit, have contaminated and continue to
> contaminate the air, land, and waters adjacent to, under, and around the MMHF
> Dump Site and the Class Area.

Id. at 83-84.

The Underlying Complaint includes the following six causes of action against all of the

315, at 11.

4

defendants, including Bear: (1) strict liability for abnormally dangerous activity, (2) public and private nuisance; (3) trespass, (4) negligence, (5) negligence *per se*, and (6) unjust enrichment. Id. at 94-100.  All six claims against Bear are based on its alleged transport and disposal of PFW at the MMHF Dump Site.

**THE POLICIES**

Bear has two policies with Star, a Commercial General Liability Policy, the "Primary Policy," and an Umbrella Policy.  Both policies were in effect from March 16, 2006 until March 16, 2007.

### Primary Policy

Under the title "Insuring Agreement," the Primary Policy states:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" <u>to which this insurance applies</u>.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  <u>However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.</u>

Docket No. 50, Exh. 1, Primary Policy, at 78. (emphasis added).

The Primary Policy includes a pollution exclusion.  <u>See</u> <u>id</u>. at 79-80 and 91.  The section states in pertinent part: "This insurance does not apply to . . . '[b]odily injury' or 'property damage' arising out of the actual, <u>alleged</u> or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' . . . ."  <u>Id</u>. at 79-80 and 116 (emphasis added).  "'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed."  <u>Id</u>. at 91.

Attached to the Primary Policy is a rider that provides limited pollution coverage at

designated well sites for bodily injury, property damage or environmental damage caused by a

"pollution incident."  Id. at 93-97.  The rider specifically states:

> This insurance applies to "bodily injury", "property damage", and "environmental
> damage" only if:
>   (1) The "bodily injury", "property damage", or "environmental damage" are
>       caused by a "pollution incident"
>       (a) on or from a "designated well site"[5] in the "coverage territory", and
>       (b) that begins and ends within 72 hours of the incident; and
>       (c) that is accidental; and
>       (d) that is reported within 90 days of the incident
>   (2) The "bodily injury", "property damage", or "environmental damage" first
>       occurs during the policy period[.]

Id. at 93-94.

Also attached to the Primary Policy is a rider titled, "Exclusion – Saline Substances

Contamination."  Id. at 113.  This exclusion states: "This insurance does not apply to 'property

damage' included within the 'saline substance contamination hazard.'"  Id. at 113.

> "Saline substance contamination hazard" includes "property damage" to any of
> the following wherever located:
>   (a) Oil, gas, water or other mineral substance, if the "property damage" is
>       caused directly or indirectly by a saline substance;
>   (b) Any other property, if the "property damage" results from the 'property
>       damage' described in (a) above.

Id.

**Umbrella Policy**

The Umbrella Policy provides insurance in excess of that provided by the underlying

insurance, the relevant underlying insurance in this case being the Primary Policy.  See Docket

---

[5]The rider states that "[d]esignate[d] well site" refers to the "specific location(s) specified
in the Declarations of this policy upon which you own, lease or rent an oil, gas or geothermal
well(s)."  Id. at 97.  Then in another rider titled "Designated Well Sites – Location Schedule," is
the statement: "schedule on file with company."  Id. at 99.  The parties have not provided the
court with a copy of that schedule.  Presumably, the designated site would have been the MMHF
Dump Site.  Nevertheless, this information is not necessary for court to resolve the motion.

No. 50, Exh. 2, Umbrella Policy, at 5-6.  The Umbrella Policy provides:

> We will have the duty to defend any claim or <u>Suit</u> seeking damages <u>covered by this policy</u> when:
>    1. The applicable limits of insurance of the underlying policies listed in the SCHEDULE OF UNDERLYING INSURANCE and the limits of insurance of any other Underlying Insurance providing coverage to the Insured have been exhausted by payment of the <u>claims to which this policy applies</u>; *or*
>    2. Damages are sought for Bodily Injury, Property Damage, Personal Injury or Advertising Injury <u>covered by this policy</u> but not covered by any Underlying Insurance listed in the SCHEDULE OF UNDERLYING INSURANCE or any other Underlying Insurance providing coverage to the Insured.

<u>Id</u>. at 6 (emphasis added).  "Suit means a civil proceeding in which Bodily Injury, Property Damage, Personal Injury, or Advertising Injury to which this insurance applies is alleged."  <u>Id</u>. at 9.

The Umbrella Policy also includes a pollution exclusion.  <u>See Id</u>. at 11-13 and 21.  The pollution exclusion clause states in pertinent part: "This insurance does not apply to . . . Bodily Injury, Property Damage,  or Personal Injury arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants from any source anywhere in the world."  <u>Id</u>. at 11 and 21.  "Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including but not limited to, smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste materials.  Waste material includes materials which are intended to be or have been recycled, reconditioned, or reclaimed."  <u>Id</u>. at 21.

Also included within the Umbrella Policy is a rider titled "Oil and Gas Industries Exclusion."  <u>Id</u>. at 20.  It states in pertinent part: "This insurance does not apply to . . . Bodily Injury, Property Damage,  Personal Injury or Advertising Injury arising out of or contributed to in any way by pollution . . . ."  The rider gives the same definition for "pollutants" as in the

7

pollution exclusion.

**SUMMARY JUDGMENT MOTION**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, the court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006).

The relationship between Bear and Star is contractual in nature. See First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md., 928 P.2d 298, 302-04 n. 6 (Okla. 1996). The policies impose upon Star two basic duties – the duty to defend and the duty to indemnify. See id. at 302-03. The primary duty, of course, is to provide indemnity. Id. at 303. The duty to defend is broader than the duty to indemnify, but Star's obligation is not unlimited. Id. The duty to defend "is measured by the nature and kinds of risks covered by the policy as well as the *reasonable expectations of the insured.*" Id. (emphasis in original).

> An insurer has a duty to defend an insured whenever it ascertains the presence of facts that give rise to *the potential of liability* under the policy. The insurer's defense duty is determined *on the basis of information* gleaned *from the petition (and other pleadings), from the insured and from other sources available to the insurer* at the time the defense is demanded (or tendered) rather than by the outcome of the third-party action.

Id. at 303-04. (emphasis in original).

The Oklahoma Supreme Court also noted in First Bank of Turley that the broader scope of an insurer's duty to defend "is evidenced by the ordinary policy terms that bind the insurer to defend 'even if any of the allegations of the suit are groundless, false, or fraudulent.'" Id. at 303-04 n. 10. The policies at issue in this case, however, do not include those specific "ordinary

8

policy terms."  Instead, the policies do the opposite – the  Primary Policy excludes coverage of

even allegations of pollution, and the Umbrella Policy states that Star will only defend claims or

"Suits" seeking damages that are covered under the Umbrella Policy when certain conditions are

met.

Moreover, while the duty to defend is broader than the duty to indemnify, "the Oklahoma

Supreme Court has repeatedly stated that 'an insurer is not obligated to defend a groundless suit

when it would not be liable under its policy for any recovery that could possibly be obtained

therein." Boggs v. Great Northern Ins. Co., 659 F.Supp.2d 1199, 1214 (N.D. Okla. 2009)

(citations omitted).  Given the terms of the policies at issue here and the information gleaned

from the Underlying Complaint and other pleadings filed in the Underlying Action, it is clear that

there is *no potential of liability* under either policy.  The court will examine each policy in turn.

The Primary Policy specifically excludes coverage for allegations of pollution.  Docket

No. 50, Exh. 1, Primary Policy, at 79-80 and 116.  The Primary Policy defines "pollutants" as

"any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot,

fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled,

reconditioned or reclaimed." Id. at 91.  All of the claims in the Underlying Action against Bear

are based on its business of transporting and disposing of what the Underlying Complaint terms

"produced fluid waste" to a dump site.  The Underlying Complaint defines "produced fluid

waste" as:

> those waste fluids and solids which are generated by operators during the course
> of oil and gas drilling completion operations.  PFW includes saltwater, sand, acid,
> oil-based drilling fluids, water-based drilling fluids, completion flowback fluid,
> frack flowback fluid, workover flowback fluid, rainwater gathered on drilling and
> productions sites, drilling cuttings, pit water, including frack, mud, circulation and
> reserve pits, and numerous other fluids and solid wastes generated during the

9

exploration and completion of oil and gas wells.

CIV-12-457-JH, Docket No. 315, Underlying Complaint, at 81.  A plain reading of these definitions shows that the "produced fluid waste" described in the Underlying Complaint is "pollution" as defined in the Primary Policy.  All of the claims in the Underlying Complaint are based on this alleged pollution; thus, the claims are not covered under the Primary Policy.  Star has no duty to defend against these allegations of pollution, as there is no potential of liability under the Primary Policy.

The Primary Policy provides a limited exception for a "pollution incident" at a designated well site within the coverage territory that lasts only 72 hours, that is accidental, that is reported within 90 days, and that first occurs during the policy period.  Id. at 93-94.  That is not the case here.  The pollution alleged in the Underlying Action was between 2003 and 2009.  CIV-12-457-JH, Docket No. 315, Underlying Complaint, at 83.  Bear entered into a contract to "dispose of water produced in connection with the production of oil and gas wells" at the MMHF Dump Site on November 11, 2004.  See Docket No. 59, Exh. 1, Water Disposal Agreement, at 21-23.  The Primary Policy was in effect from March 16, 2006 until March 16, 2007.  Docket No. 50, Exh. 1, Primary Policy, at 6.  The limited exception is not applicable, as the alleged pollution began before the policy period, lasted well beyond 72 hours and clearly was not accidental.

The Umbrella Policy specifically excludes coverage for actual or threatened pollution.[6] Docket No. 50, Exh. 2, Umbrella Policy, at 11, 20 and 21.  The pollution exclusion here does not, as the Primary Policy did, include the word "alleged."  Bear argues that this change in the

---

[6]The Umbrella Policy defines "pollutants" the same as the Primary Policy.  Id. at 21.  The court has already determined that the allegations in the Underlying Complaint are based on pollution as defined in the policies.

10

language results in Star having a duty to defend against allegations of pollution and coverage if it is proven that Bear did not actually pollute. The language in the duty to defend clause creates the opposite result. The Umbrella Policy provides that Star will defend "any claim or Suit seeking damages covered by this policy." Id. at 6. Star is not required under the Umbrella Policy to defend against claims or Suits seeking damages that are not covered thereunder. Pollution is not covered under the Umbrella Policy. Thus, Star has no duty to defend against those claims. Moreover, as the court noted above, "an insurer is not obligated to defend a groundless suit when it would not be liable under its policy for any recovery that could possibly be obtained therein." Boggs, 659 F.Supp.2d at 1214.

The relevant language in both the Primary Policy and the Umbrella Policy is clear, unambiguous and reasonably susceptible to only one meaning on its face. See Certain Underwriters at Lloyds London v. B3, Inc., 262 P.3d 397, 400 (Okla. App. Div. 1 2011). The court thus affords those terms their plain and ordinary meaning. See Bituminous Cas. Corp. v. Cowen Constr., Inc., 55 P.3d 1030, 1033 (Okla. 2002). "The rule that policies are to be construed against the insurer has no application where the provisions are susceptible of only one reasonable construction." Certain Underwriters, 262 P.3d at 400 (citation omitted). The court also is "mindful that an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase." Bituminous, 55 P.3d 1033.

The parties are bound by the terms of the policies. Id. The court may not rewrite the policies to make them better for either party. Id. "An insured cannot insist upon a strained construction of relevant policy language in order to claim a patent ambiguity exists nor can it contradict the written instrument's plain terms under the guise of a latent ambiguity." Id. at

11

1034.  "Courts must not torture the policy language in order to 'create ambiguities where none exist.'"  Id. at 1035 (citation omitted).

While not determinative, the court notes that Bear is a corporate business.  It bargained for an exception to the pollution exclusion.  Bear is entitled only to the coverage for which it negotiated and paid.  Bear argues that read literally, the policies provide virtually no coverage for risks inherent to its business.  In fact, the policies do provide coverage for some risks inherent to Bear's business.  For example, the policies cover liability as a result of an accidental spill of waste (a "pollution incident") or an accidental collision of one of Bear's trucks with another vehicle, object or person.  Though it is unfortunate that the policies do not cover liability for pollution as alleged in the Underlying Complaint, the court may not rewrite the policies.

**CONCLUSION**

Accordingly, Star's motion for summary judgment [Docket No. 50] is hereby GRANTED.  Bear's motion to compel discovery [Docket No. 60] is DENIED as moot.

IT IS SO ORDERED this 16th day of October, 2013.


**Dated this 16th day of October, 2013.**


Ronald A. White
United States District Judge
Eastern District of Oklahoma